# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TOMMIE LEE MCDOWELL,

    Plaintiff

v.

HULSEY, et. al.,

    Defendants

Case No.: 3:19-cv-00230-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 88, 89, 111

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Summary Judgment as to Counts I and II. (ECF No. 88.) Also before the court is Plaintiff's Motion for Summary Judgment as to Count IV. (ECF No. 89.) Plaintiff recently requested dismissal of Count V, and that his pending motion for summary judgment proceed only as to Count IV, instead of Counts IV and V. The undersigned has recommended that his motion be granted. (ECF No. 121.) Plaintiff also filed a resubmission of his motion for summary judgment as to Count IV since he had previously moved for summary judgment as to Counts IV as well as V. (ECF No. 111.) Therefore, ECF No. 89, which moved for summary judgment as to Counts IV and V should be denied as moot.

In sum, this Report and Recommendation will address the motion for summary judgment filed as to Counts I and II (ECF No. 88), and the motion filed only as to Count IV (ECF No. 111).

1    Defendants filed a response to Plaintiff's motions for summary judgment on June 7, 2021.

2  (ECF No. 118.)[1] Plaintiff filed a response to Defendants' motion, which the court will also

3  construe as his reply brief in support of his own motion. (*See* ECF Nos. 122, 123, 124.)

4    After a thorough review, it is recommended that Plaintiff's motions be denied.

5    **I. BACKGROUND**

6    Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

7  proceeding pro se with this action pursuant to 42 U.S.C. § 1983. The events giving rise to this

8  action took place while Plaintiff was housed at Ely State Prison (ESP).

9    Plaintiff was allowed to proceed with a retaliation claim in Count I against Hulsey and

10  Ward; a retaliation claim in Count II against Hulsey; and a retaliation claim in his first amended

11  supplemental Count IV against Hammel and Reubart.[2] (*See* ECF Nos. 17 (screening order on

12  original complaint), 18 (complaint), 29 (screening order on first amended supplemental claims

13  IV and V), and 30 (first amended supplemental claim IV).)

14    Defendants Hammel and Ward have been dismissed without prejudice under Federal

15  Rule of Civil Procedure 4(m); therefore, this action is proceeding only against Hulsey and

16  Reubart.

17    In Count I, Plaintiff alleges that on November 14, 2018, Hulsey instructed Plaintiff's cell

18  mate, Jackson, to roll up his property  because the security and escort officers were going to get

19  Jackson shortly. Jackson complied and packed up his property. Then, Correctional Officer Beetle

20  (not a defendant) and Ward (a dismissed defendant) came to the cell and escorted Plaintiff and

21

22  [1] This is also Defendants' own motion for summary judgment, which the court will address in a separate Report and Recommendation once it is fully briefed.

23  [2] Again, Plaintiff has requested that Count V, which asserted a conspiracy claim against Hammel and Reubart be dismissed.

Jackson to the showers. Jackson confirmed with Ward what property was his. While the officers were packing Jackson's property onto a cart, Plaintiff saw his television on the cart. Plaintiff inquired about the television and Hulsey stated, "calm down, no one's taking your property." Out of precaution, Plaintiff asked for an emergency grievance but none of the officer's responded. When Plaintiff saw more of his property on the cart, he declared he would be writing a grievance. Ward shouted, "do it-and see what happens!" Plaintiff returned to a completely empty cell, and broke down in tears. He started the grievance process, and did not receive any of his property until twelve days later.

In Count II, Plaintiff alleges that his property was not returned until November 25, 2018. Between November 14 and 25, 2018, Plaintiff talked to Hulsey multiple times about getting his property back and to get bare essentials. Hulsey said he would "make a call to property if he got a chance" and also said, "man, you gotta stop writing these grievances." Plaintiff knew then that Hulsey was retaliating against him for stating he would file a grievance. When Plaintiff followed up with Hulsey, Hulsey stated the property room was "busy." Hulsey disregarded Plaintiff's pleas to obtain bare necessities, including a toothbrush and toothpaste, utensils, drinking container, towel, washcloth, shower shoes, or clothing.

In Count IV, Plaintiff alleges that in April 2019, Hammel told Plaintiff he was scheduled for a full classification hearing with Hammel and Reubart to discuss a transfer to another prison. In May 2019, Plaintiff filed this lawsuit, and Reubart was one of the defendants. When Plaintiff spoke to Hammel in July 2019, he learned that Reubart had cancelled the full classification hearing due to an increase in Plaintiff's risk factor score and reactivation of his Florida detainer. When Plaintiff asked how this could be, Hammel said he knew nothing about the detainer's deactivation and commented that Plaintiff "was a very litigious person" and there would be no

transfer at that time. Hammel told Plaintiff to talk to Reubart, and when Plaintiff did so, Reubart commented, "You've filed your damn lawsuit." Plaintiff alleges that Reubart reactivated the detainer, which increased Plaintiff's risk factor and made Plaintiff ineligible for transfer.

Plaintiff moves for summary judgment as to Counts I, II, and IV.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

4

1  *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

2  nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

3  477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

4  determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

5  *Anderson*, 477 U.S. at 249.

6        In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

7  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

8  come forward with evidence which would entitle it to a directed verdict if the evidence went

9  uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

10 the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

11 *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

12 omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

13 defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

14 an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

15 party cannot establish an element essential to that party's case on which that party will have the

16 burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

17       If the moving party satisfies its initial burden, the burden shifts to the opposing party to

18 establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

19 *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

20 dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

21 be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

22 *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

23 (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

1 by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

2 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

3 pleadings and set forth specific facts by producing competent evidence that shows a genuine

4 dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

5 ### III. DISCUSSION

6 **A. Retaliation Standard**

7 "Section 1983 provides a cause of action for prison inmates whose constitutionally

8 protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791

9 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a

10 claim consists of the following elements: "(1) An assertion that a state actor took some adverse

11 action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

12 (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

13 reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v.*

14 *Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

15 **B. Counts I and II**

16 Plaintiff's motion sets forth his version of events, which aligns with the allegations of his

17 pleading. Plaintiff's own motion acknowledges, however, that there is a genuine dispute of

18 material fact as to whether Hulsey retaliated against Plaintiff in taking his property along with

19 his cellmate's and in not giving his property back for twelve days afterward, as he alleges in

20 Counts I and II. Specifically, Plaintiff states that Hulsey claims he was not working and was not

21 assigned to Plaintiff's unit during the time period in question, and that Hulsey claims he has no

22 knowledge of the incident. (ECF No. 88 at 20-21, appears to be Hulsey's response to Plaintiff's

23 interrogatories).

Plaintiff attempts to get around this dispute by pointing out that he used Hulsey's name in the grievances he wrote on the issue. (ECF No. 88 at 7-8.) The court, however, may not resolve differing versions of events or make credibility determinations on summary judgment, as those are the functions of the jury.

Defendants' response to Plaintiff's motion also raises several other genuine disputes as to material facts that preclude the court from granting Plaintiff's motion for summary judgment as to Counts I and II.

First, Defendants maintain that Plaintiff's property was transferred pursuant to a search of his cell because of suspected contraband held in the cell by Plaintiff's cellmate. (ECF No. 118-3.) Second, as to Count I, Defendants point out that Plaintiff's only allegation is that Hulsey told Plaintiff to "calm down" and that "no one was taking [his] property." In addition, the inventory transfer form was filled out by Ward and Beedle, there is no evidence of Hulsey's involvement in the cell search or transfer of property. (ECF No. 118-2 at 3-4.) Defendants further argue there is no evidence linking the taking of the property to Hulsey as it was Ward that allegedly made the threatening comment. Finally, they contend that there was a legitimate correction goal for confiscating Plaintiff's property: Plaintiff's cellmate had drugs mailed to him and had a weapon hidden inside his mattress. (ECF No. 118-3; Reubart Decl., ECF No. 118-8.)

As to Count II, Defendants point out that it is V. Crowder who inventoried the property upon its return, and there is no evidence of Hulsey's involvement. (ECF No. 118-2 at 4.)

Plaintiff's motion should be denied as to Counts I and II because Defendants raise genuine disputes as to several material facts in response to Plaintiff's motion.

7

**B. Count IV**

Plaintiff's statement of facts in his motion largely mirrors his allegations in his first amended supplemental Count IV.

Plaintiff submits correspondence from the Florida Department of Corrections (DOC) dated March 2, 2012, stating that Plaintiff was convicted in Washington County Florida of the charge of battery and was sentenced to a term of five years, which runs consecutive to his sentence in Nevada, and would begin once he was released from the sentence he was serving in Nevada. He was advised that a detainer was on file with NDOC to protect Florida's interest in serving his sentence, and the detainer would remain in place until Plaintiff was returned to Florida to complete the sentence. (ECF No. 89 at 19.)

Plaintiff sent a kite to Hammel on March 5, 2018, stating he no longer had any holds or detainers on file, but his "booking summary report" from December 8, 2016, still said Plaintiff did. He asked what the current booking summary said in 2018. He received a response that the booking report would continue to show previous holds, even if they are not active, and that Plaintiff's hold was deactivated. (ECF No. 89 at 16.)

Plaintiff sent a kite to Hammel on August 4, 2019, about his transfer and risk score factor, and the response states: "Unfortunately your felony Florida warrant has been reactivated so your points are now way too high." (ECF No. 89 at 15.) Plaintiff sent another kite to Hammel on August 8, 2019, stating that Hammel said his Florida warrant had been reactivated, and asked when the reactivation occurred, and how did Hammel find out. Plaintiff said he had documentation that the detainer was resolved. The response states: "discussed in person." (ECF No. 89 at 20.)

Plaintiff then sent a kite to Reubart on August 9, 2019, stating that he spoke to Reubart that day about how a "resolved and disposed of detainer from the State of Florida" had been, reactivated, considering that Plaintiff had documentation from both states that the detainer was resolved. The response states that the Florida DOC reactivated the detainer for the five year sentence in Florida on July 17, 2019. (ECF No. 89 at 17.)

Plaintiff provides a letter from the Florida DOC dated September 3, 2019, that states he was convicted in Washington County Florida for the charge of battery in 2012, and was sentenced to serve a state prison term of five years, which would begin after he completes his sentence in Nevada. (ECF No. 89 at 18.)

In December of 2020, Drummond (not a defendant) responded to Plaintiff's kite asking if he recalled a hearing regarding reactivation of the Florida detainer some time in 2019. Drummond said he did recall the FCC (full classification committee) and NOTIS showed the Florida detainer hold was on July 17, 2019. (ECF No. 89 at 23.)

With respect to Count IV, Defendants assert that Plaintiff was incarcerated within the Florida DOC in 1995, pursuant to an interstate agreement with NDOC. (Budd Aff., ECF No. 118-4 at 2.)[3] In 1996, Plaintiff was convicted of battery on a law enforcement officer and was sentenced to a five year prison term, to run consecutively to the life sentence he was already serving for his convictions in Nevada. (ECF No. 30 at 12-13; ECF No. 118-4 at 2.) Based on that conviction, a hold or "detainer" was placed on Plaintiff so that, if he were released from incarceration in Nevada for any reason, he would be transferred to the custody of the Florida DOC to serve his five-year sentence for the battery conviction. (*Id.*)

---

[3] Tammy Budd is a Correctional Program Administrator in the Bureau of Admission and Release for the Florida DOC.

1    Defendants argue that Plaintiff concedes that detainer was never deactivated, and so

2  Reubart could not have reactivated it. In addition, they contend that detainers are attached to an

3  NDOC inmate's institutional file to ensure extradition to another state upon release to NDOC

4  custody, to face criminal charges or serve a sentence for a conviction. (Rutledge Decl.,

5  ECF No. 118-10.)[4] Under Administrative Regulation (AR) 548, it is the warrants coordinator of

6  NDOC's Offender Management Division (OMD), and not an associate warden, such as Reubart,

7  that coordinates detainers with other states. (ECF No. 118-11 at 3.)

8    Defendants assert that Florida notified NDOC that Plaintiff was convicted of a crime in

9  Florida and was sentenced, with the sentence to run consecutively to his sentence in Nevada.

10  (Budd Aff, ECF No. 118-4; Rutledge Decl., ECF No. 118-10.) Florida DOC requested that the

11  detainer be attached to Plaintiff. (*Id*.) In 2017, Florida DOC sent Plaintiff a letter stating that

12  Washington County, Florida did not have a detainer on him. (*See* Budd Aff., ECF No. 118-4 at

13  3.) Budd explains that this was partially incorrect as Washington County itself had not requested

14  the detainer, but Florida DOC still had a hold on Plaintiff for the 60-month consecutive state

15  prison sentence. (*Id.*.) In 2019, Florida DOC became aware that NDOC had removed the detainer

16  from Plaintiff's file in mistaken reliance on the 2017 letter. When Florida DOC became aware of

17  that fact, they advised NDOC that the detainer was still valid and NDOC reactivated the detainer

18  on July 17, 2019. (*Id*.) NDOC then advised that it "reactivated" the detainer on July 17, 2019,

19  based on correspondence from an N. Carter from Florida DOC. (*Id*.) Florida DOC notified

20  NDOC of the detainer again on June 1, 2021, and requested that it be attached to Plaintiff's

21

22

23  [4] Rutledge is the Program Officer I, Warrant Coordinator, at NDOC, and he assists in coordinating the extradition of inmates within NDOC to other states when they face criminal charges or have been convicted of crimes.

institutional file, to ensure his extradition to Florida upon release from NDOC custody for any reason. (*Id.*)

Defendants also argue that there is no evidence that any full classification committee meeting was ever scheduled or cancelled by Reubart. (Reubart Decl., ECF No. 118-8.)

Moreover, they contend the detainer was entered because of Plaintiff's conviction in Florida, and reactivation cannot be said to have been caused by Plaintiff's protected conduct. Reubart maintains he had no involvement in the activation or deactivation of any detainer on Plaintiff's file. (Reubart Decl., ECF No. 118-8.)

Reubart states that he never had a conversation with Plaintiff regarding the substance of any lawsuit he has ever filed, and in the summer of 2019, was not aware that Plaintiff had filed a lawsuit against NDOC employees regarding the alleged confiscation of property in retaliation for filing grievances. Reubart did not become aware of the lawsuit until sometime after the court issued its screening order allowing portions of the supplemental claims to go forward against him. (Reubart Decl., ECF No. 118-8.)

Reubart is alleged to have retaliated against Plaintiff by reactivating the detainer in July 2019, and cancelling his full classification committee hearing in spring/summer of 2019, due to Plaintiff naming Reubart as a defendant in this lawsuit. Defendants are correct in pointing out that the original complaint was not screened until April 28, 2020. (ECF No. 17.) In addition, Reubart was dismissed from the original complaint without prejudice. Plaintiff did not seek leave to file his first amended supplemental claim in Count IV against Reubart until May 12, 2020 (ECF No. 20), and the court issued its screening order allowing the claim to proceed against Reubart on September 23, 2020. (ECF No. 29.) This all occurred roughly a year after Plaintiff claims that Reubart retaliated against him.

1    In sum, Reubart has presented a genuine dispute as to various material facts and

2 therefore, Plaintiff's motion for summary judgment should be denied as to Count IV.

3                                    **IV. RECOMMENDATION**

4    IT IS HEREBY RECOMMENDED that the District Judge enter an order: **DENYING**

5 Plaintiff's previous motion for summary judgment that addressed both Counts IV and V (ECF

6 No. 89) as **MOOT,** and **DENYING** Plaintiff's motions for summary judgment as to Counts I and

7 II (ECF No. 88) and as to Count IV (ECF No. 111).

8    The parties should be aware of the following:

9    1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

10 this Report and Recommendation within fourteen days of being served with a copy of the Report

11 and Recommendation. These objections should be titled "Objections to Magistrate Judge's

12 Report and Recommendation" and should be accompanied by points and authorities for

13 consideration by the district judge.

14    2. That this Report and Recommendation is not an appealable order and that any notice of

15 appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

16 until entry of judgment by the district court.

17

18 Dated: June 23, 2021

19                                                    _William G. Cobb_____
                                                      William G. Cobb
20                                                    United States Magistrate Judge

21

22

23